IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDSEY MORRIS, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 11 C 2610 ) |
| NORTHSTAR AEROSPACE (CHICAGO) INC. | ) ) ) ) |
| Defendant. | ) |

# **OPINION AND ORDER**

Plaintiff Lindsey Morris is an employee of the Department of Defense's Defense Contract Management Agency ("DCMA"). During the pertinent time period, plaintiff was a Lead Quality Assurance Specialist. Defendant Northstar Aerospace (Chicago) Inc. is a defense contractor. As of late 2010, plaintiff was responsible for monitoring defendant's contract compliance. In doing so, plaintiff made findings against defendant. Defendant thereafter complained to plaintiff's supervisors, including making allegedly false statements about plaintiff's conduct and seeking to have plaintiff removed from overseeing defendant's contract.

Plaintiff was subsequently reassigned to a different contract. Plaintiff also alleges that a letter from plaintiff was placed in his personnel file and it prevented him from obtaining a promotion. It is also alleged that defendant's complaint has hindered plaintiff in seeking other job opportunities at DCMA.

Plaintiff contends defendant's conduct constitutes the state law torts of tortious interference with contract and intentional infliction of emotional distress ("IIED").[1] Plaintiff brought this suit in the Circuit Court of Cook County, Illinois. Defendant removed the case to federal court based on the federal officer removal statute, which includes removal by "any person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). Defendant moves to dismiss based on federal officer immunity. Alternatively, defendant contends plaintiff fails to adequately allege any cognizable tort.

It is expressly alleged that defendant is a contractor with the Defense Department. Exhibits to the Complaint support that the contract was for producing a military helicopter. It is expressly alleged that plaintiff, as a government contract compliance officer, found that defendant committed contract violations. Defendant does not dispute that there are administrative procedures for

---

[1] Plaintiff also brings claims of defamation and negligent infliction of emotional distress, but now concedes that those claims should be dismissed.

challenging the findings of a compliance officer such as plaintiff. Exhibits to the complaint support that defendant engaged in such procedures, apparently successfully. Plaintiff does not question nor complain about plaintiff engaging in such procedures. Plaintiff complains that, distinct from the ordinary review procedures, defendant's President wrote a December 18, 2010 letter to a DCMA Commander complaining about plaintiff's conduct during his compliance examination. In that letter, defendant characterizes plaintiff's conduct as being unethical, lacking impartiality, a witch hunt, and a violation of unspecified laws. The facts set forth in the letter, however, do not identify any ethical or legal violations.[2] Instead, the gist of the complaint in the letter is that plaintiff's investigation was too detailed and demanded too much information so as to interfere with defendant's ability to perform the contract. Defendant expressly requested that plaintiff be removed from overseeing defendant's contract.

In response, DCMA decided to investigate and, pending the investigation, reassigned plaintiff to a different contractor. The January 8, 2010 memorandum to plaintiff does not specify the nature of the investigation and plaintiff makes no allegations regarding the conduct or outcome of that

---

[2]The letter also references enclosures that are not included in the exhibits to the Complaint. Only the body of the letter is attached to the Complaint.

investigation. The January memorandum states in part: "The Commander of our CMO, COL Baez, was recently advised that there have been some concerns expressed by Northstar Aerospace personnel concerning your behavior at their Bedford Park contractor facility and your interaction with contractor personnel. DCMA will promptly look into these concerns while conducting an investigation, and while doing so it is prudent to immediately detail you from your current position . . . to the same position on [another team]." The December letter from defendant and the January memorandum were both placed in plaintiff's personnel file. Plaintiff alleges the assignment to a different contractor was essentially a demotion, but does not contend that it resulted in any decrease in pay. He does allege that having defendant's letter in his file prevented his promotion from Grade 12 to Grade 13. He also alleges that it has "hindered" his ability to obtain promotions.

Primarily relying on *Gulati v. Zuckerman*, 723 F. Supp. 353 (E.D. Pa. 1989), a defamation case, defendant contends it is entitled to federal officer immunity for discretionary actions related to performance of a federal military contract. In *Gulati*, the immunized conduct involved a contractor making a report about suspicious conduct of one of its former employees as required by the

Defense Department's Industrial Security Manual for Safeguarding Classified Information ¶ 6(b)(1) (1989). Additional allegedly defamatory statements were made after an investigation was begun. *See id.* at 354-55. In holding that it was appropriate to immunize the defendants in this situation, the court relied on the security issues involved and that reporting the information was mandatory. "A grant of immunity is clearly justified in this case. The maintenance of the necessary level of security throughout our vast defense industry requires a high level of cooperation by defense contractors. Contractors have the duty to report all manner of potentially damaging information about their employees to the appropriate federal authorities. They must be able to do this free of the fear of expensive litigation. Self-censorship in adverse information reporting would be extremely detrimental to the federal goal of ferreting out security risks in the defense industry. It is the province of federal security investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from founded fictions." *Id.* at 358. In that same case, the court held defendants' letter to the Small Business Administration ("SBA") requesting a copy of the former employee's SBA application and stating that he was suspected of engaging in unethical, corrupt, and illegal activities was not protected by the immunity. *Id.*

at 354, 358. "Writing this letter was not part of the defendants' 'official' duties as government contractors. The defendants make no allegation that this letter was written under federal direction or pursuant to any regulatory or contractual obligation. Protecting the writer of such a letter from tort liability would serve no important governmental purpose." *Id.* at 358.

In ***Mangold v. Analytic Servs., Inc.***, 77 F.3d 1442 (4th Cir. 1996), Air Force investigators had been investigating whether Air Force officer Mangold, who headed a team administering Air Force procurements, was abusing his authority, including by pressuring the defendant government contractor to hire a family friend. *Id.* at 1444. As part of its investigation, the Air Force interviewed employees of the contractor. None of the defendants initiated contact with the Air Force. Colonel Mangold and his wife brought suit against the contractor and its executives alleging defamation, IIED, and other state law claims. The Fourth Circuit weighed the interests involved and determined, particularly in light of the public interest in identifying and addressing fraud, waste, and mismanagement in government and common law immunities for witnesses, that contractor immunity applies "only insofar as necessary to shield statements and information, whether truthful or not, given by a government contractor and its employees *in response to*

*queries* by government investigators engaged in an official investigation." *Id.* at 1447-49 (emphasis in original). The immunity applied to the facts of *Mangold* because the plaintiffs relied entirely on statements the defendants made to investigators, the defendants did not initiate the investigation, the defendants did not volunteer any information beyond the scope of the investigators' inquiries, and they provided information only as requested. *Id.* at 1449-50.

The present case is distinguishable from the actions held to be immunized in *Gulati* and *Mangold*. Unlike *Gulati*, the present case does not involve any issues of Morris's or someone else's security clearance. Unlike *Mangold*, Morris does not rely on statements made while responding to an official investigation. In the December letter, defendant contended plaintiff's conduct interfered with its ability to perform its contract. There are no accusations by defendant of fraud on the part of plaintiff. This is not the type of situation in which the interests involved favor extending federal officer immunity to a private contractor. Plaintiff's claims will not be dismissed based on immunity.

When it is determined that the immunity does not apply, the remaining claims are often remanded. *See, e.g., Gulati*, 723 F. Supp. at 358-59. However, only a colorable defense is required to support removal jurisdiction under

§ 1442(a). *Sether v. Agco Corp.*, 2008 WL 1701172 *1 (S.D. Ill. March 28, 2008); *Weese v. Union Carbide Corp.*, 2007 WL 2908014 *4, 9 (S.D. Ill. Oct. 3, 2007). *Compare also* ***Kircher v. Putnam Funds Trust***, 547 U.S. 633, 644 n.12 (2006). The court will presently retain jurisdiction over the case. Therefore, the arguments that plaintiff fails to allege cognizable claims will also be considered.

The Supreme Court summarized the pleading standard applicable to Rule 12(b)(6) motions:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal

> conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949-50 (2009).

The Seventh Circuit applies a type of sliding scale approach to plausibility. The more complex and less straightforward the case and the more costly potential discovery, the more detail that will be required to satisfy the plausibility requirement. *McCauley v. City of Chicago*, ___ F.3d ___, ___, 2011 WL 4975644 *4-5 (7th Cir. Oct. 20, 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082-83 (7th Cir. 2008); *Limestone Dev., Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803-04 (7th Cir. 2008). A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together. In other words,

the court will ask itself could these things have happened, not did they happen." *Swanson*, 614 F.3d at 404. "[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden [of stating a claim] than it was before the [Supreme] Court's recent decisions." *Id.*

Under Illinois law, which the parties agree applies, the elements of a tortious interference with contract claim are: "(1) the existence of a valid and enforceable contract between the plaintiff and a third party; (2) defendant's awareness of the contract; (3) defendant's intentional and unjustified inducement of a breach; (4) defendant's wrongful conduct caused a subsequent breach of the contract by the third party; and (5) damages." *Echo, Inc. v. Timberland Machs. & Irrigation, Inc.*, 661 F.3d 959, 968 (7th Cir. 2011). Defendant contends none of the elements are satisfied, but primarily focuses on the first and fourth elements. A central problem with plaintiff's allegations is that he does not allege any breach of his employment contract with the government. In response to the motion to dismiss, plaintiff instead focuses on the allegation that he lost future promotions because of defendant's alleged conduct. Plaintiff, however, had no contract to be promoted so his allegations fail as an interference with contract claim. *Coons v. Hessler*, 1999 WL 410013 *4 (N.D. Ill. May 27, 1999).

Under federal pleading rules, plaintiff is not limited to nor bound by the legal characterizations of his claims contained in the Complaint; a claim is stated as long as the facts alleged would support relief. *See* ***McCullah v. Gadert***, 344 F.3d 655, 659 (7th Cir. 2003); ***Kirksey v. R.J. Reynolds Tobacco Co.***, 168 F.3d 1039, 1041 (7th Cir. 1999); ***Mirbeau of Geneva Lake, LLC v. City of Lake Geneva***, 746 F. Supp. 2d 1000, 1007 n.8 (E.D. Wis. 2010). In response to a motion to dismiss, though, the legal basis for a claim must be identified and a sufficient legal argument made in support of it. ***Kirksey***, 168 F.3d at 1041-42; ***Lekas v. Briley***, 405 F.3d 602, 614-15 (7th Cir. 2005); ***Hays v. Bardasian***, 615 F. Supp. 2d 796, 798-99 (N.D. Ind. 2009). Although plaintiff makes no argument to this effect, his claim is more in the nature of a tortious interference with prospective economic advantage claim. Under Illinois law, the elements of such a claim are: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." ***Borsellino v. Goldman Sachs Group, Inc.***, 477 F.3d 502, 508 (7th Cir. 2007) (quoting ***Voyles v. Sandia Mortg. Corp.***, 196 Ill. 2d 288,

751 N.E.2d 1126, 1133-34 (2001) (quoting *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 667 N.E.2d 1296, 1299 (1996))). *See also Coons*, 1999 WL 410013 at *4 (adequately alleged tortious interference with prospective economic advantage claim based on denial of promotion); *Mustafa v. Ill. Dep't of Pub. Aid*, 1997 WL 194980 *6 (N.D. Ill. March 14, 1997) (same). Even if such a claim were to be considered despite plaintiff's failure to present a supporting argument, there is no allegation that defendant knew of plaintiff's promotional opportunities. Also, the allegations of interference with promotional opportunities are conclusory; plaintiff does not show that the letter actually interfered with any promotion. It is not plausible that, absent an employer finding of employee misconduct, the letter itself caused the loss of a promotion.

The Count II tortious interference with contract claim will be dismissed.

Under Illinois law, the elements of IIED are: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant intended his conduct to inflict severe emotional distress or knew that there was a high probability that it would do so; and (3) the defendant's conduct did in fact cause severe emotional distress." *Cartwright v. Cooney*, 788 F. Supp. 2d 744, 755 (N.D. Ill. 2011). Defendant contends none of the elements are satisfied.

"[T]he tort does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." [*Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001)] (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 533 N.E.2d 806, 809 (1988)). This standard is quite high. In order to meet the threshold for intentional infliction of emotional distress, the defendant's conduct must extend beyond the bounds of human decency and be considered intolerable in a civilized community. *Id.*; *see also Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 607 N.E.2d 201, 211 (1992). Therefore, "to serve as a basis for recovery, the defendant's conduct must be such that the 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] Outrageous!'" *Honaker*, 256 F.3d at 490 (quoting *Doe v. Calumet City*, 161 Ill. 2d 374, 641 N.E.2d 498, 507 (1994)).

To determine whether the conduct alleged is extreme and outrageous, we employ an objective standard, taking into consideration the particular facts of the case. *Id.* The Supreme Court of Illinois has described a number of nonexclusive factors that may inform this analysis, including: the degree of power or authority which a defendant has over a plaintiff; whether the defendant reasonably believed that his objective was legitimate; and whether the plaintiff is particularly susceptible to emotional distress because of some physical or mental condition or peculiarity. *Honaker*, 256 F.3d at 490-92. In the employer/employee context, courts have found extreme and outrageous behavior to exist where the employer "clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Id.* at 491. Employers often and necessarily take actions during the course of business that result in emotional distress, but those actions cannot be classified as "extreme and outrageous" unless they "go well beyond the parameters of the typical workplace dispute." *Id.*

*Lewis v. Sch. Dist. No. 70*, 523 F.3d 730, 746-47 (7th Cir. 2008).

It is not exceptional that an entity being subjected to government oversight would complain about a government employee who is being vigilant and finds violations. Here, it is alleged that defendant sent a single letter to a supervising official. There is no allegation that defendant followed up on this letter. Moreover, defendant had no authority over plaintiff; it could only complain to officials who had authority over plaintiff. It was up to the supervising officials to investigate the allegations and determine the extent of any discipline. Plaintiff was laterally assigned to a different location. While plaintiff alleges the letter alone interfered with his obtaining promotions, there is no allegation that there was ever any finding of wrongdoing based on false allegations from defendant or otherwise. Additionally, defendant's letter does not request any disciplinary action, only that plaintiff be reassigned elsewhere. In the employment setting, a certain amount of criticism is common. Plaintiff's allegations do not go to the extreme necessary to support that workplace discipline or conduct rises to the level of extreme and outrageous conduct. *See Lewis*, 523 F.3d at 747. Plaintiff does not adequately allege an IIED claim.

IT IS THEREFORE ORDERED that defendant's motion to dismiss [10] is granted. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff dismissing plaintiff's cause of action with prejudice.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: DECEMBER 29, 2011